J-S06007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KENNETH ALLEN | |
| Appellant | No. 2589 EDA 2016 |

Appeal from the Judgment of Sentence July 13, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007335-2015

BEFORE:  MOULTON, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED JUNE 19, 2017**

Kenneth Allen appeals from the July 13, 2016 judgment of sentence entered in the Delaware County Court of Common Pleas following his conviction for retail theft.[1]  Allen's appellate counsel has filed an **_Anders_**[2] brief and a petition to withdraw from representation.  We affirm and grant counsel's petition to withdraw.

This case stems from a November 29, 2015 retail theft.  At trial, Anthony Sapp testified that at the time of the offense he was working as a loss prevention officer for Burlington Coat Factory in Upper Darby.  N.T.,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3929(a)(1).

[2] **_Anders v. California_** 386 U.S. 738 (1967).

5/19/16, at 22-23. Sapp testified that at approximately 2:00 p.m. on November 29, 2015, he observed Allen walk into the store and place four watches, a bottle of fragrance, and a bottle of cologne into a shopping cart. *Id.* at 24-27. Sapp then saw Allen ride the elevator to the ground floor. *Id.* at 27-28. Sapp used the escalator to follow Allen downstairs and "to give him customer service." *Id.* at 28. Sapp stated that when he arrived at the ground floor, he located Allen in a fitting room. *Id.* at 28-29. Sapp asked Allen if he needed help, to which Allen responded "no." *Id.* at 49-50. Sapp observed Allen exit the fitting room empty-handed and take the escalator upstairs. *Id.* at 30-31. Sapp then observed empty watch boxes and perfume cases inside the fitting room. *Id.* at 31.

Sapp testified that he watched Allen walk past the registers and approach the front entrance to the store. *Id.* at 33. Before Allen passed the front door, Sapp approached him and asked if he knew anything about the empty boxes in the fitting room. *Id.* at 33-34. Allen responded that he did not want any trouble, and Sapp took him into the loss prevention office. *Id.* at 34, 52. When Sapp asked Allen to return any store merchandise he had on his person, Allen removed three watches from the inside of his pants. *Id.* at 34-35. Sapp contacted the Upper Darby Police Department and, within five minutes, Officer James Fiore arrived. *Id.* at 36.

Officer Fiore testified that when he arrived at the loss prevention office, he spoke with Allen and conducted a pat-down of Allen's person, which revealed other items in Allen's pants, as well as another watch on

- 2 -

Allen's wrist. *Id.* at 65-67.

On cross-examination, Sapp explained that he had made a compact disc ("CD") of the surveillance video but that another loss prevention officer accidentally discarded it. *Id.* at 55, 58. Sapp further explained that he could not make an additional CD because the server deletes the recording after 60 days and he did not learn that the CD had been discarded until after the 60 day period. *Id.* at 56-57.

On May 19, 2016, a jury convicted Allen of retail theft. On July 13, 2016, the trial court sentenced Allen to 16 to 32 months' incarceration, followed by three years' probation. Allen did not file a post-sentence motion. On August 11, 2016, Allen filed a timely notice of appeal.

Because counsel has filed a petition to withdraw pursuant to *Anders* and its Pennsylvania counterpart, *Santiago*,[3] we must address counsel's petition before reviewing the merits of Allen's underlying claims. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007). We first address whether counsel's petition to withdraw satisfies the procedural requirements of *Anders*. To be permitted to withdraw, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain

---

[3] *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Here, appellate counsel has stated that after a conscientious examination of the record, he "found no issues to raise in this appeal and he believes this appeal to be wholly frivolous." App. to Withdraw, 11/3/16, at 1. Appellate counsel furnished a copy of the *Anders* brief to Allen, as well as a letter advising him that "[i]f you have any issues that you wish to bring to the Court's attention, you must do it now. You may submit your own brief o[r] hire another attorney to do it for you." Ltr. to Allen, 11/30/16. We conclude that counsel's petition to withdraw has complied with the procedural dictates of *Anders*.

We next address whether counsel's *Anders* brief meets the requirements established by the Pennsylvania Supreme Court in *Santiago*. The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

- 4 -

Here, appellate counsel has provided a summary of the procedural history and the facts with appropriate citations to the record. **Anders** Br. at 4-6. Counsel's brief states that he conducted a thorough review of the record and determined that any appeal would be frivolous, and set forth his reasons for that conclusion. **Id.** at 8-9. Accordingly, appellate counsel has substantially complied with the requirements of **Anders** and **Santiago**.

Allen has not filed a *pro se* brief or a counseled brief with new, privately-retained counsel. We, therefore, review the issue raised in the **Anders** brief.

Allen raises the following issue: "Did the Commonwealth fail to prove [Allen] guilty of the offense of Retail Theft because it failed to produce video footage showing him committing the offense when Defense [sic] witness Anthony Sapp testified it had been 'preserved' at the preliminary hearing in this case?" **Anders** Br. at 3.

Counsel's issue presented and the brief's argument section appear to commingle two separate arguments: (1) the evidence was insufficient to convict Allen because of the Commonwealth's failure to produce the video; and (2) the destruction of the video violated his due process rights.

First, Allen contends that, without the surveillance video, the evidence was insufficient to support his conviction.

We apply the following standard when reviewing a sufficiency of the evidence claim:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa.Super. 2015) (quoting

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa.Super. 2014)) (some

alterations in original).

We conclude that the Commonwealth presented sufficient evidence for the jury to find every element of retail theft beyond a reasonable doubt. Sapp testified that he observed Allen remove the watches and the fragrance and cologne bottles from the shelves and take them into the fitting room. Sapp further testified that when Allen left the fitting room, Sapp saw empty boxes inside. As Allen walked toward the front door, Sapp stopped him and took him to the loss prevention office where Allen removed stolen merchandise from his person. Officer Fiore also testified that when he arrived, he found more stolen items on Allen. This evidence was sufficient,

and the absence of a surveillance video does not alter this conclusion. *See Commonwealth v. Dent*, 837 A.2d 571, 576-77 (Pa.Super. 2003) (holding evidence of retail theft sufficient without video); *Commonwealth v. Steward*, 762 A.2d 721, 723 (Pa.Super. 2000) (holding video of theft was not "crucial evidence" when security officer "observe[d] appellant's action contemporaneously with the crime").

Second, Allen claims a violation of his due process rights because the Commonwealth failed to preserve the surveillance video.[4] The Pennsylvania Supreme Court has explained that there are two categories of "constitutionally guaranteed access [to evidence]:  evidence that is exculpatory and material, and evidence that is potentially useful." *Commonwealth v. Chamberlain*, 30 A.3d 381, 402 (Pa. 2011).

The first category implicates a *Brady*/*Agurs*[5] claim, which entitles "defendants [to] access . . . certain kinds of evidence prior to trial, so they may 'be afforded a meaningful opportunity to present a complete defense.'" *Chamberlain*, 30 A.3d at 402 (quoting *Commonwealth v. Snyder*, 963 A.2d 396, 401 (Pa. 2009)).  "This guarantee of access to evidence requires the prosecution to turn over, if requested, any evidence which is exculpatory

---

[4] We note that nothing in the certified record suggests that the Commonwealth was ever in possession of the video.

[5] *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Agurs*, 427 U.S. 97 (1976).

and material to guilt or punishment, and to turn over exculpatory evidence which might raise a reasonable doubt about a defendant's guilt, even if the defense fails to request it." ***Id.*** (internal citations omitted). In this situation, a defendant need not show bad faith. ***Id.***

The second category "involves evidence that is not materially exculpatory, but is potentially useful, that is destroyed by the state before the defense has an opportunity to examine it." ***Id.*** "When the state fails to preserve evidence that is 'potentially useful,' there is no federal due process violation 'unless a criminal defendant can show bad faith on the part of the police.'" ***Id.*** (quoting ***Arizona v. Youngblood***, 488 U.S. 51, 58 (1988)). "Potentially useful evidence is that of which 'no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" ***Id.*** (quoting ***Youngblood***, 488 U.S. at 57).

We "must first determine whether the missing evidence is materially exculpatory or potentially useful." ***Id.*** Because Allen does not claim that the surveillance video had exculpatory value, and based on the evidence presented, we have no reason to believe it would be materially exculpatory, we focus on the second category – that is, whether the Commonwealth withheld potentially useful information and acted in bad faith.

Even assuming that the video might have been useful, Allen has not established that the Commonwealth destroyed the evidence in bad faith. First, nothing in the certified record suggests that the Commonwealth was ever in possession of the video. Second, the relevant testimony at trial

would not support a finding of bad faith on anyone's part. During trial, Sapp

testified about the loss of the video:

> [COMMONWEALTH]: Do you know how the CD was -- the DVD was discarded, how it was thrown out? What were the circumstances?
>
> [SAPP]: We had a prior visit maybe not too long ago by our regional manager. So we were doing like some cleaning in the office just to make sure it looked squared away by the time the visit came. And then I guess one of the [loss prevention officers] just threw it away.
>
> . . .
>
> [COMMONWEALTH]: So at the time you suspect it was discarded there were other people in loss prevention capacity?
>
> [SAPP]: Yes.
>
> [COMMONWEALTH]: How many others?
>
> [SAPP]: There's two others.
>
> [COMMONWEALTH]: And did you approach them and ask them if they were aware of [sic] this DVD was thrown out?
>
> [SAPP]: Yes.
>
> [COMMONWEALTH]: And did they recall the event?
>
> [SAPP]: Yes.
>
> [COMMONWEALTH]: Did you have any prior knowledge of [Allen], did you know him?
>
> [SAPP]: No.
>
> [COMMONWEALTH]: Do you have any reason to try to abscond or try to conceal the evidence in this case?
>
> [SAPP]: No.
>
> [COMMONWEALTH]: Did you -- after finding out that the DVD was discarded did you attempt to go back to the hard drive to retrieve the information a second time?

[SAPP]: Yes. I went to the server that it should have been on and it was already too late to record again.

[COMMONWEALTH]: And by saying too late what had transpired?

[SAPP]: It was -- like I said it was 60 days that it should have been recorded but it wasn't. It's 60 days that you have until it gets deleted.

[COMMONWEALTH]: So you're confident you didn't have access to that tape any further?

[SAPP]: Correct.

[COMMONWEALTH]: Or that information, I should say.

[SAPP]: Correct.

N.T., 5/19/16, at 58-59. Sapp's uncontradicted testimony establishes the tape was not destroyed in bad faith.[6]

---

[6] We further note that the trial court instructed the jury on the missing evidence:

> THE COURT: . . . There's been a discussion about the DVD that was not produced in this case. There's a question of what weigh [sic] if any you should give to the failure of Burlington Coat Factory to produce the DVD in question. If three factors are present and there is no satisfactory explanation for a party failure to produce an item the jury is allowed to draw a common sense inference that the evidence would have been unfavorable to that party. The three necessary factors are, first, that the item is available to that party and not for the others. Second, it appears that the item contains or shows special information material to the issue. And third, the item would not be merely cumulative evidence. Let me talk to counsel at sidebar at this point.
>
> . . .
>
> THE COURT: Ladies and gentlemen, with respect to the missing item I want to talk one further -- add something

*(Footnote Continued Next Page)*

Thus, we conclude that Allen has failed to establish that the video was potentially useful and that the Commonwealth acted in bad faith.

Judgment of sentence affirmed. Petition for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/2017

---

*(Footnote Continued)*

further to that. That is if you find the three factors are present and there is no satisfactory explanation for Burlington/Commonwealth failure to produce the item you may infer, if you chose to do so, that would have been evidence unfavorable to Burlington/Commonwealth in this matter.

N.T., 5/19/16, at 96-98.