J-S43042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                              :           PENNSYLVANIA
                              :
            v.                    :
                              :
                              :
JOSE A. DEJESUS-PEREZ         :
                              :
          Appellant        :   No. 665 MDA 2023

Appeal from the Judgment of Sentence Entered April 6, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000553-2022

BEFORE:   McLAUGHLIN, J., KING, J., and COLINS, J.[*]

CONCURRING/DISSENTING MEMORANDUM BY COLINS, J.:

**FILED: NOVEMBER 18, 2024**

Because I disagree with the learned majority's conclusion that testimony concerning the contents of the video was admissible and with its conclusion that admission of this testimony was harmless with respect to Appellant's DUI conviction, I dissent from the majority's affirmance of that conviction.

As the majority correctly holds, testimony concerning the contents of a surveillance video recording is subject to the best evidence rule.  Therefore, testimony by a witness as to what such a video shows must be excluded where the witness did not observe the events at the time that they occurred, the witness testifies that the video showed the defendant committing acts that

---

[*] Retired Senior Judge assigned to the Superior Court.

constitute elements of the crime with which the defendant is charged, the video is not produced, and no exception to the best evidence rule applies. *Commonwealth v. Green*, 162 A.3d 509, 518-19, 522 (Pa. Super. 2017) (*en banc*); *Commonwealth v. Lewis*, 623 A.2d 355, 358-59 (Pa. Super. 1993). Here, the content of the video was closely related to a controlling issue in this case, as Appellant was charged with DUI and the witnesses testified that the video showed Appellant driving on a public street in an impaired fashion. N.T. Trial at 19-20, 43-44. In addition, the witnesses testified to the content of the video, as they testified concerning what they saw on the video when they viewed it, not to anything that they witnessed at the time that it occurred. *Id.* at 19, 43. The best evidence rule therefore applied to the admissibility of their testimony concerning what the video showed. *Green*, 162 A.3d at 518; *Lewis*, 623 A.2d at 358-59.

As the majority also correctly holds, an exception to the best evidence rule allows admission of testimony as to the contents of a video recording where it is shown that the video was lost or destroyed through no fault of the party that seeks to introduce the testimony. Pa.R.E. 1004(a); *Green*, 162 A.3d at 518; *Commonwealth v. Dent*, 837 A.2d 571, 589 (Pa. Super. 2003); *Lewis*, 623 A.2d at 357. I disagree, however, with the majority's conclusion that this exception was satisfied here.

The burden was on the Commonwealth, as the proponent of the testimony, to show both that the video had been lost or destroyed and that it

was not at fault in the loss or destruction of the video. *Green*, 162 A.3d at 518; *see also Commonwealth v. Weber*, 701 A.2d 531, 535 (Pa. 1997) (burden of proof is on proponent of evidence to establish its admissibility). The Commonwealth failed to satisfy that burden.

It was undisputed that the video was lost and that no copies were in existence at the time of trial. N.T. Trial at 5. This Court has held that loss of a video by third party before the Commonwealth was able to obtain a copy does not constitute fault by the Commonwealth, and that the best evidence does not preclude testimony as to the video's contents under those circumstances. *Commonwealth v. Williams*, 154 A.3d 336, 338, 341 (Pa. Super. 2017) (third party lost video when attempting to copy it for the police); *Commonwealth v. Loughnane*, 128 A.3d 806, 810, 813-14 (Pa. Super. 2015) (video had already been recorded over before police requested it), *rev'd on other issue*, 173 A.3d 733 (Pa. 2017).

Here, however, the record showed that the loss of the video occurred after the Commonwealth was able to obtain it from the repair shop. Moreover, contrary to the majority's assertion, Majority Memorandum at 7, the evidence did not show that the police merely failed to check whether they had received the correct video. The arresting officer testified that the police received the video from the owner of the repair shop on a thumb drive and transferred the video to discs shortly after Appellant's arrest, which was before the video was lost. N.T. Trial at 5, 44. There was no evidence that the Commonwealth made

any attempt at that time to check that the video that it received was what it had requested or that the necessary portions had been successfully transferred. To the contrary, the Commonwealth admitted that it did not look at its copies of the video from the repair shop's cameras for over a year, and the record shows that it did not even provide the video to Appellant in response to Appellant's discovery requests. *Id.* at 11-15.

Nor was there was even evidence that the discs made and retained by the Commonwealth contained all of the video that the repair shop had supplied. While the Commonwealth asserted that the shop owner provided the wrong day of video, N.T. Trial at 5, 11, the record is equally consistent with the possibility that the Commonwealth received video that included both the wrong day and the correct day, but failed to successfully copy all of that video to the discs before it placed them in the evidence locker, as there was no testimony that it checked the discs after the transfer. Because it was the Commonwealth's burden to show that it was without fault in causing the loss of the video and the Commonwealth failed to show that it did not cause the loss of the video, the trial court erred in permitting the shop owner and arresting officer to testify to what they saw on the video. *Green*, 162 A.3d at 518; *Lewis*, 623 A.2d at 358-59.[1]

_____

[1] Although the admissibility of evidence is generally reviewed on an abuse of discretion standard, whether the trial court properly applied our rules of evidence involves a question of law as to which our standard of review is *de*
*(Footnote Continued Next Page)*

- 4 -

I also cannot agree that Appellant's DUI conviction can be affirmed on the alternative ground that the admission of the testimony concerning the contents of the video was harmless error. An appellate court may affirm a conviction despite the erroneous admission of evidence if the Commonwealth shows beyond a reasonable doubt that the admission of the evidence was harmless. ***Commonwealth v. Poplawski***, 130 A.3d 697, 716 (Pa. 2015); ***Commonwealth v. Radecki***, 180 A.3d 441, 461 (Pa. Super. 2018). An error in admitting evidence is harmless and does not require a new trial where the evidence in question did not prejudice the defendant or any prejudice was *de minimis*, where the evidence in question was cumulative of other, substantially similar evidence that was properly admitted, or where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect was so insignificant by comparison that the error could not have contributed to the verdict. ***Poplawski***, 130 A.3d at 716; ***Commonwealth v. Taylor***, 209 A.3d 444, 450 (Pa. Super. 2019); ***Green***, 162 A.3d at 519.

While there was other properly admitted evidence that Appellant had driven the car to the repair shop and there was properly admitted evidence that Appellant was acting in an impaired fashion while he was seen later

*novo* and our scope of review is plenary. ***Commonwealth v. Raboin***, 258 A.3d 412, 422 (Pa. 2021); ***Commonwealth v. Brown***, 52 A.3d 1139, 1176 (Pa. 2012).

walking around in the parking lot, the issue of when Appellant became intoxicated was in dispute. Appellant asserted that there was no evidence that he was intoxicated before he was already parked in the repair shop's parking lot, and the Commonwealth argued in its closing that the testimony concerning the video showed that Appellant was impaired while he was driving. N.T. Trial at 53, 58-59. Even though the other evidence that Appellant had driven the car and that he was impaired while in the parking lot would be sufficient to support an inference that Appellant was impaired when he drove the car, the testimony as to the contents of the video was the only direct evidence of when Appellant was driving and that he was driving in an impaired fashion. Because the testimony concerning the contents of the video was materially different and stronger proof of an element of DUI than the other evidence admitted at Appellant's trial, its admission cannot be harmless error and a new trial is required. *Lewis*, 623 A.2d at 356-37, 359 (admission in shoplifting case of testimony that missing video showed defendant taking radio from store shelf and glancing around the store while he handed it to his accomplice and the accomplice hid it in his jacket was not harmless error where other evidence did not show those acts).

For the foregoing reasons, I would affirm Appellant's possession of drug paraphernalia and driving without a license convictions[2] but vacate Appellant's judgment of sentence and DUI conviction and remand for a new trial on that charge.

---

[2] I do agree that the error was harmless with respect to Appellant's possession of drug paraphernalia and driving without a license convictions and therefore cannot be a basis for reversal of those convictions. The testimony concerning the video could not have prejudiced Appellant in any way with respect to the possession of drug paraphernalia charge, as it related only to Appellant driving his car and contained no evidence whatsoever of any controlled substance or of any item used to produce, package, or ingest any controlled substance. In addition, although the testimony concerning the video provided evidence of an element of the offense of driving without a license, it was cumulative of other evidence that supported that conviction, as video from the officers' body cameras that was played at trial showed that Appellant admitted that he had driven the car to the repair shop parking lot. Trial Court Opinion at 7-8.