J-S83034-16

2017 PA Super 7

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LEROY DEPREE WILLIAMS, | : | |
| | : | |
| Appellee | : | No.  526 WDA 2016 |

Appeal from the Order March 17, 2016,
in the Court of Common Pleas of Erie County,
Criminal Division at No(s): CP-25-CR-0003213-2015

BEFORE:   FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:          **FILED JANUARY 12, 2017**

The Commonwealth of Pennsylvania appeals from an order that precluded the Commonwealth from introducing at trial any testimony describing the content of lost surveillance video footage relating to the break-in of a pizza shop, for which the Commonwealth charged Leroy Depree Williams (Appellee) with various offenses.[1]  Upon review, we reverse and remand for further proceedings.

The trial court set forth the background underlying this matter as follows.

> On September 20, 2015, [Appellee] was charged with burglary, criminal trespass, and criminal mischief for allegedly breaking the front window of Empire Pizza, crawling in and smashing the register before fleeing empty-handed.  No one was

---

[1] The Commonwealth has certified that the order at issue will terminate or substantially handicap the prosecution, making this an interlocutory appeal as of right under Pa.R.A.P. 311(d).

*Retired Senior Judge assigned to the Superior Court.

present at the time, but the business was equipped with video cameras that captured the break-in, including footage of the perpetrator.

Shortly after the break[-]in, the police and Amar [Jasarevic (Jasarevic)[2]], the proprietor of Empire Pizza, arrived at the shop and watched the surveillance video. Based on what he saw, Officer Sweeney believed [Appellee] was responsible for the break[-]in. Officer Sweeney asked … Jasarevic to make a copy of the video for the police and left to pursue [Appellee].

When … Jasarevic attempted to make a copy of the video, the original footage of the burglary was lost such that no copies could be made. As a result, [Appellee] is precluded from seeing the video that Officer Sweeney and … Jasarevic viewed before the footage was lost. This information was subsequently provided to [Appellee].

On January 20, 2016, [Appellee] filed [a motion to dismiss the charges against him based upon (1) a violation of the best evidence rule,[3] and (2) the spoliation of evidence resulting in prejudice against him.] An evidentiary hearing was held on [Appellee's] motion on February 26, 2016 during which the Commonwealth adduced the testimony of Officer Sweeney and … Jasarevic.

Trial Court Opinion (TCO), 3/17/2016, at 1-2 (unnecessary capitalization omitted).

---

[2] In its opinion, the trial court misspells "Jasarevic" as "Jarasevic." We have corrected the error throughout this opinion when quoting from the trial court opinion.

[3] The "best evidence rule" provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. Pertinent to this appeal, pursuant to Pa.R.E. 1004(a), "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if[] all the originals are lost or destroyed, and not by the proponent acting in bad faith."

- 2 -

Following the hearing, the trial court issued an order and accompanying opinion concluding that there was no violation of the best evidence rule "because the proponent of the evidence was not acting in bad faith when the original video footage was lost." *Id.* at 2-3. Nevertheless, the trial court concluded that the video evidence "could … be materially exculpatory" and that, because Appellee had been permanently deprived of the opportunity to view the video, allowing testimony of its content would result in a fundamentally unfair trial. *Id.* at 3-4. Thus, the trial court suppressed any testimony regarding the content of the video. This appeal followed.

On appeal, the Commonwealth presents one issue for our consideration: "Whether the lower court erred as a matter of law or abused its discretion by finding that any testimony regarding the content of the surveillance video must be suppressed." Commonwealth's Brief at 3.

We begin with our well-settled standard of review.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252-53 (Pa. Super. 2016)

(internal quotation marks and citations omitted).

With respect to a defendant's access to evidence, our Supreme Court

has explained that

the Due Process Clause of the Fourteenth Amendment requires defendants be provided access to certain kinds of evidence prior to trial, so they may "be afforded a meaningful opportunity to present a complete defense." This guarantee of access to evidence requires the prosecution to turn over, if requested, any evidence which is exculpatory and material to guilt or punishment, ***see Brady***[ ***v. Maryland***, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d. 215 (1963),] and to turn over exculpatory evidence which might raise a reasonable doubt about a defendant's guilt, even if the defense fails to request it, ***see United States v. Agurs***, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). If a defendant asserts a ***Brady*** or ***Agurs*** violation, he is not required to show bad faith.

There is another category of constitutionally guaranteed access to evidence, which involves evidence that is not materially exculpatory, but is potentially useful, that is destroyed by the state before the defense has an opportunity to examine it. When the state fails to preserve evidence that is "potentially useful," there is no federal due process violation "unless a criminal defendant can show bad faith on the part of the police." Potentially useful evidence is that of which "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." In evaluating a claim that the Commonwealth's failure to preserve evidence violated a criminal defendant's federal due process rights, a court must first determine whether the missing evidence is materially exculpatory or potentially useful.

*Commonwealth v. Chamberlain*, 30 A.3d 381, 402 (Pa. 2011) (some citations omitted).[4]

Here, in suppressing any testimony regarding the content of the surveillance video, the trial court reasoned as follows.

> The surveillance video purportedly captured the identity of the perpetrator of the break-in at Empire Pizza. The Commonwealth seeks to introduce the content of the video through the testimony of Officer Sweeney and … Jasarevic. At a minimum, Officer Sweeney would testify the perpetrator in the video is [Appellee]. Just as this evidence could be materially inculpatory, so too could it be materially exculpatory. Having been permanently deprived of the opportunity to view the video, [Appellee] is precluded from any materially exculpatory evidence in it.
>
> To allow testimony of the content of the video when [Appellee] will never have the opportunity to view the video would result in a trial that is fundamentally unfair. [Appellee] would have no factual basis on which to cross examine either Officer Sweeney or … Jasarevic about their observations. [Appellee] would be relegated to speculation in mounting any defense to the video, where the Commonwealth would stand on firm ground. Under these circumstances, there is irreparable

---

[4] We question whether the above due-process analysis even applies in this case, given that Jasarevic, and not the police, destroyed the video evidence at issue. Nevertheless, we refrain from offering any analysis in this regard, as neither the parties nor the trial court addresses this issue. *See Chamberlain*, 30 A.3d at 404 n.7 ("[Chamberlain] has not provided any argument regarding whether the destruction of evidence by the coroner, who is not a police officer, should be treated in the same manner as the destruction of evidence by police. For purposes o[f] our discussion, we will assume that it should."); *see also Commonwealth v. Colavita*, 993 A.2d 874, 891 (Pa. 2010) ("This Court has consistently held that an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties. Where the parties fail to preserve an issue for appeal, the Superior Court may not address that issue *sua sponte*. The rule is no different in the constitutional context." (internal quotation marks and citations omitted)).

prejudice in depriving [Appellee] of a meaningful opportunity to present a defense.

A criminal trial cannot proceed when the defendant begins at such a disadvantage that the resulting trial is fundamentally unfair. Accordingly, any testimony regarding the content of the surveillance video must be suppressed.

TCO, 3/17/2016, at 3-4 (citation omitted).

On appeal, the Commonwealth argues that "[t]he observations of Officer Sweeney and … Jasarevic cannot be suppressed under a due process violation because the video is only potentially useful for … Appellee and the police did not act in bad faith in its destruction." Commonwealth's Brief at 9. Specifically, the Commonwealth contends that Appellee's argument at the hearing that "had [he] had the opportunity to … review the [video surveillance], [he] may have found something … that could help at trial," and the trial court's observation that the evidence "could … be materially exculpatory," demonstrate that the evidence is not materially exculpatory, but only potentially useful. *Id.* at 9-10. The Commonwealth further argues that Appellee and the trial court relied improperly on speculation and conjecture herein because there is nothing in the record to indicate that the video is exculpatory. *Id.* at 10. Finally, the Commonwealth argues that because the video is only potentially useful, Appellee had to show bad faith on the part of the police, and he failed to do so as demonstrated by the circumstances and determined by the trial court. *Id.*

Upon review, we agree with the Commonwealth that the evidence at issue is not materially exculpatory. Appellee's claim that the video "may have" something that could be helpful to him at trial (*i.e.*, may show that the identity of the perpetrator was not Appellee), and the trial court's determination that the video "could … be materially exculpatory" is purely speculative, which does not establish materiality. **See Commonwealth v. Spotti**, 94 A.3d 367, 383 (Pa. Super. 2014) (*en banc*) (rejecting Spotti's claim that a video recording was materially exculpatory because it "may have provided evidence regarding whether [a third party] was operating his vehicle in a dangerous manner," explaining that Spotti's "assertion can never be verified because the recording does not exist and no evidence contradicts, or could otherwise be seen to impeach, [the officer's] testimony regarding the content of the recording. Thus, [Spotti's] claim that the recording may have depicted [the third party] engaging in unsafe driving is purely speculative. The 'mere possibility' that the recording 'might have' depicted events differently does not establish 'materiality.'").

Since the video evidence herein was only potentially useful, Appellee was required to show that the Commonwealth acted in bad faith in failing to preserve it. **See Chamberlain**, 30 A.3d at 402 ("Evidence that is possibly exculpatory is only merely potentially useful, the loss of which, … creates a constitutional deprivation only if the Commonwealth acted in bad faith.") (citation omitted). Albeit in the context of its analysis under the best

evidence rule, the trial court concluded that the Commonwealth did not act in bad faith in failing to preserve the video evidence:

> At the preliminary hearing, … Jasarevic told Officer Sweeney he inadvertently erased the video when he attempted to burn the police a copy. At the evidentiary hearing, … Jasarevic testified he discovered the hard drive malfunctioned and the footage was deleted when he tried to make a copy for the police. In either scenario, the loss of the original footage was not done in bad faith particularly since it was in the best interest of … Jasarevic to preserve a video of the burglary in progress and the burglar.
>
> [Appellee] argues the police should have secured the video prior to leaving the scene by taking the entire video surveillance system. This argument is unpersuasive. Officer Sweeney routinely asks for a copy of a surveillance video and never, in his many years of experience, has taken an entire surveillance system to secure a video recording. As a practical matter, given the fact a violent burglary had just occurred, with the front window smashed in, it was understandable why … Jasarevic would want to keep the security system in place.

TCO, 3/17/2016, at 2-3. The trial court's findings are supported by the testimony of Jasarevic and Officer Sweeney, N.T., 2/2/6/2016, at 7-11, 13, 16-19, and we agree with the trial court's determination that the Commonwealth did not act in bad faith in failing to preserve the video evidence.

Thus, because the lost surveillance video footage was only potentially useful and the police did not act in bad faith in failing to preserve it, we conclude that the trial court erred in suppressing testimony relating to the contents of the video. Accordingly, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

Order reversed.  Case remanded.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017